**Robert A. WISE, Plaintiff-Appellant,**

v.

**Richard Anthony BRAVO, The City of Pueblo, and Pueblo Police Department, Defendants-Appellees.**

**No. 80–1494.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 15, 1981.

Decided Dec. 14, 1981.

Rehearing Denied Jan. 13, 1982.

---

Maurice R. Franks, Pueblo, Colo., for plaintiff-appellant.

Marlin W. Burke, Denver, Colo., for defendants-appellees.

Before SETH, Chief Judge, and BARRETT and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

Robert Wise (Wise) appeals from a district court order granting Captain Richard Bravo's (Bravo) motion for summary judgment dismissing an assault and trespass claim filed against Bravo pursuant to 42 U.S.C.A. § 1983. Wise also appeals from a prior court order granting the City of Pueblo (City) and the Pueblo Police Department (Department) motions to dismiss pursuant to claims filed under 42 U.S.C.A. §§ 1983 and 1985 and Bravo's motion to dismiss a claim for interference with visitation rights pursuant to 42 U.S.C.A. § 1983.

The undisputed operative facts gleaned from depositions, some ten in all, giving rise to this cause of action spring from a dispute between Wise and his ex-wife, Gayle, over visitation rights to their daughter. In the divorce decree, Gayle was given custody rights to the daughter. Even though no formal visitation rights were ordered by the decree, the court acquiesced in the arrangements for visitation made between Wise and Gayle.

On March 17, 1978, Wise took his daughter for an extended visit following an oral agreement with Gayle. On March 24, 1978, Gayle phoned Wise advising him that she wanted their daughter back that night. Wise refused, claiming that he didn't have to return the child at that time. Thereafter, Gayle drove to Wise's apartment and attempted to obtain her daughter. She was unsuccessful and departed. Following the incident, both Wise and Gayle called the Police Department. In addition, Gayle called Captain Bravo at his home. Later that evening, Captain Bravo and five other police officers arrived at Wise's apartment to retrieve the girl. The officers knocked on the door, identified themselves as police officers, and asked to come in. Upon seeing Bravo, Wise stated that he was "not welcome" in the apartment. Officer Avery stated that Bravo was an officer and had as much right as the rest to enter. The police then entered the apartment without further objection from Wise. Avery told Wise that they were there for the purpose of returning the little girl to her mother. Wise consented and released his daughter to the police officers.

Wise claims that one of the officers carried "a little black decanter sort of thing", which he assumed to be Mace, and that he felt threatened by the object's presence.

In an order dated May 5, 1978, the trial court limited the claims brought against

Bravo which might be compensable under § 1983 to those of trespass and assault. Other claims against Bravo, the City and the Department were dismissed.

On appeal, Wise alleges that the trial court erred by: (1) granting Bravo's motion to dismiss claims relating to interference with his visitation rights pursuant to 42 U.S.C.A. § 1983; (2) granting Bravo's motion for summary judgment; (3) granting the City's motion for dismissal; and (4) striking certain paragraphs from his amended complaint.

## I.

Wise contends that the trial court erred by dismissing his claim for damages filed pursuant to 42 U.S.C.A. § 1983 [1] for interference with his visitation rights.

To state a claim for relief under § 1983, a plaintiff must demonstrate that he was deprived of a right secured by the Constitution or laws of the United States, and that any such deprivation was achieved under color of law. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1975); *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

§ 1983 does not, standing alone, create any equal or civil rights of citizens; rather, it provides a remedy for rights guaranteed by the Constitution or laws of the United States. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

Wise cites *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) and *Caban v. Mohammed*, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979) to illustrate that he has a constitutional right to a protected parent-child relationship. Next, Wise cites *Fenslage v. Dawkins*, 629 F.2d 1107 (5th Cir. 1980) and *Hinton v. Hinton*, 436 F.2d 211 (D.C.Cir.1970) to demonstrate judicial recognition for his claimed right to visitation.

In *Stanley v. Illinois, supra*, the Supreme Court, on grant of application for writ of certiorari, rejected, on Fourteenth Amendment Equal Protection and Due Process grounds, the ruling of the Illinois Supreme Court that an unwed father is presumed unfit to raise his children. In *Caban v. Mohammed, supra*, the Supreme Court, on grant of application for writ of certiorari from the New York Court of Appeals, held that the Equal Protection Clause of the Fourteenth Amendment was offended by the sex-based distinction in the New York statute which authorized an unwed mother to block the adoption of her child but which did not recognize the authority of the unwed father to do so. In *Fenslage v. Dawkins, supra*, a diversity of citizenship case, the court recognized that state law is applicable in determining whether a father is entitled to recover the value of his minor son's services from the person who entices the child to leave the father's custody.

The cases cited by Wise comport with a long line of federal court decisions involving challenges to state law governing a wide range of subject matter involving family relationships, including child custody, anchored to claimed deprivations of Due Process or Equal Protection guaranteed by the Fourteenth Amendment, which provides that no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States. These decisions have, in the Fourteenth Amendment context, recognized that the relationship between parent and child is constitutionally protected. *Lassiter v. Department of Social Services*, 452 U.S. 18,

1. Section 1983 of Title 42, U.S.C.A. provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *Quilloin v. Walcott*, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), *reh. denied*, 435 U.S. 918, 98 S.Ct. 1477, 55 L.Ed.2d 511 (1978); *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Stanley v. Illinois, supra; Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *Prince v. Massachusetts*, 321 U.S. 158 (1944); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir. 1977).

 These federal decisions, to be sure, recognize the important, fundamental interest involved, deserving of close Due Process and/or Equal Protection scrutiny. However, there is no substantive federal constitutional, statutory or common law governing family relationships, including matters of custody and visitation rights between parents and children. The substantive aspect of the subject of family law and domestic relations is one uniquely within the province of the respective states. The state's power to legislate, adjudicate and administer all aspects of family law, including determinations of custodial and visitation rights, is subject to scrutiny by the federal judiciary within the reach of the Due Process and/or Equal Protection Clauses of the Fourteenth Amendment. *In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890); *Schleiffer v. Meyers*, 644 F.2d 656 (7th Cir. 1981), U.S. app. pndg.; *Crouch v. Crouch*, 566 F.2d 486 (5th Cir. 1978); *Huynh Thi Anh v. Levi*, 586 F.2d 625 (6th Cir. 1978); *Solomon v. Solomon*, 516 F.2d 1018 (3d Cir. 1975); *Leonhard v. Mitchell*, 473 F.2d 709 (2d Cir. 1973), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1002 (1973). The Fourteenth Amendment applies to the States those specific rights contained in the first eight amendments of the Constitution which declare fundamental personal rights. In addition, the Four-

teenth Amendment encompasses and applies to the States those pre-existing fundamental rights recognized by the Ninth Amendment, which provides: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." *See Quilloin v. Walcott, supra, Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). *See also: Developments in the Law-The Constitution and the Family*, 93 Harv.L. Rev. 1156 (1980), wherein it is stated that "[r]estricting state power within constitutional bounds is an appropriate task for the federal judiciary . ." *Id.* at p. 1159.

Colorado law provides a remedy for interference with visitation rights between divorced parents. The Uniform Dissolution of Marriage Act, § 14–10–129, C.R.S. 1973, provides that a noncustodial parent is entitled to reasonable visitation rights. Any interference with this right may be redressed by seeking enforcement of the child custody order in a contempt proceeding. § 14–10–121, C.R.S. 1973; *County of Clearwater, Minn. v. Petrash*, 598 P.2d 138 (Colo. 1979); *Brown v. Brown*, 183 Colo. 356, 516 P.2d 1129 (Colo.1973).

Additionally, Colorado law provides citizens a remedy for torts committed by police officers. *Frick v. Abell*, 602 P.2d 852 (Colo. 1979); *Cooper v. Hollis*, 600 P.2d 109 (Colo. App.1979); § 29–5–111, C.R.S. 1973.

In granting Bravo's motion to dismiss, the trial court stated:

> To the extent plaintiff is attempting to assert claims relating to interference with his visitation rights or other matters related to his prior marriage, *no federal or constitutional claim is alleged.* [Emphasis supplied].

[R., Vol. I, pp. 13–14].

 Wise argues that "clearly, the instant case supports a claim for damages under Section 1983." Significantly, Wise has failed to demonstrate any substantial,

identifiable federal constitutional deprivation under the Due Process or Equal Protection Clauses of the Fourteenth Amendment warranting federal court scrutiny. Any deprivation of Wise's visitation rights was so insubstantial in duration and effect it failed to rise to a federal constitutional level. This is so, particularly in light of the fact that Wise surrendered the child without protest. Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice. *Brice v. Day*, 604 F.2d 664 (10th Cir. 1979), *cert. denied*, 444 U.S. 1086, 100 S.Ct. 1045, 62 L.Ed.2d 772 (1980). We hold that Wise has failed to allege or demonstrate that he suffered any cognizable Due Process of law protection guaranteed him by the Fourteenth Amendment. Thus, it follows that there was no § 1983 deprivation.

§ 1983 should not be viewed as a vehicle to resolve a dispute involving visitation rights-privileges. That is a subject uniquely reserved to the state court system. Any claim for relief that Wise may have exists under Colorado law and in the Colorado state system.

The trial court did not err by dismissing Wise's 42 U.S.C.A. § 1983 claims.

## II.

Wise argues that the trial court erred by granting Bravo's motion for summary judgment.

Following the trial court's May 5, 1978 order, the only claims remaining in Wise's § 1983 complaint were trespass and assault. On October 26, 1979, the court granted summary judgment for Bravo after entertaining arguments from both sides.[2]

"Although a Section 1983 claim has been described as 'a species of tort liability', *Im-*

bler v. Pachtman, 424 U.S. 409 [96 S.Ct. 984, 47 L.Ed.2d 128] (1976), it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980), *reh. denied*, 445 U.S. 920, 100 S.Ct. 1285, 63 L.Ed.2d 606 (1980).

Section 1983 imposes liability for violations of rights protected by the Constitution or laws of the United States, not for violations of duties of care arising out of tort law. Remedies for the latter type of injury must be sought in the state court under the traditional tort-law principles. *Baker v. McCollan*, 443 U.S. 137, 97 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The Civil Rights Act was not enacted to discipline local law enforcement officials. *Atkins v. Lanning*, 556 F.2d 485 (10th Cir. 1977); *Wells v. Ward*, 470 F.2d 1185 (10th Cir. 1972). It is only if the misuse of legal procedure is so egregious as to subject the aggrieved individual to a deprivation of constitutional dimensions, and the tortfeasor is acting under color of state law, that Section 1983 may be employed. *Norton v. Liddel*, 620 F.2d 1375 (10th Cir. 1980).

In determining whether the state officer has crossed the constitutional line that would render the abuse actionable under § 1983, we must inquire into the amount of force used in relationship to the need presented, the extent of the injury inflicted and the motives of the state officer. If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely carelessness or unwise, excessive zeal amounting to an abuse of official power that shocks the conscience, it may be

---

2. Wise filed no affidavits or specific reference to testimony or other evidence to support his claim that he was assaulted by Bravo, or that Bravo violated Section 1983 by some civil trespass entitling Wise to damages.

"The Court finds and holds that there is no genuine issue as to any material fact; that the

material facts viewed most favorably to the plaintiff do not support an action under Section 1983 to vindicate any federally protected right, and that the defendant is entitled to a judgment in his favor as a matter of law."
[R., Vol. II, p. 31].

redressed under § 1983. *Lessman v. McCormick*, 591 F.2d 605 (10th Cir. 1979). *See also: Shillingford v. Holmes*, 634 F.2d 263 (5th Cir. 1981).

Recently, the Supreme Court attempted to clarify the parameters of § 1983 in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The case involved an action brought by an inmate of a Nebraska prison to recover the value of hobby materials lost by the prison. The Court said:

> To accept respondent's argument that the conduct of the state officials in this case constituted a violation of the Fourteenth Amendment would almost necessarily result in turning every alleged injury which may have been inflicted by a state official acting under "color of law" into a violation of the Fourteenth Amendment cognizable under § 1983. It is hard to perceive any logical stopping place to such a line of reasoning. Presumably, under this rationale any party who is involved in nothing more than an automobile accident with a state official could allege a constitutional violation under § 1983. Such reasoning "would make the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states." *Paul v. Davis*, 424 U.S. 693 [96 S.Ct. 1155, 47 L.Ed.2d 405] (1976). We do not think the drafters of the Fourteenth Amendment intended the amendment to play such a role in our society.

> 451 U.S. at p. 544, 101 S.Ct. at p. 1917.

Summary judgment is appropriate if there exists no genuine issue as to any material fact. Fed.Rules Civ.Proc. rule 56(c), 28 U.S.C.A. In considering a motion for summary judgment, the materials presented by the parties must be viewed in the light most favorable to the party opposing the motion. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027 (10th Cir. 1978).

 Wise alleged in his complaint that under Captain Bravo's direction, officers held cans of Mace and threatened him, constituting a § 1983 assault claim. However, a brief review of Wise's deposition shows that he had difficulty articulating the nature of the assault claim:

THE DEPONENT: Okay. I look at it this way. Them coming in my apartment without a warrant or anything else was a threat, yes, I would say they threatened me.

Q (By Mr. Burke) All right.

A I refer to that as a threat.

Q Besides coming into your apartment without a warrant what else did you consider to be a threat from the police officers?

A A can of Mace, anyway I assumed it's Mace, a little black (deponent indicating) decanter sort of thing, I assumed it is Mace, maybe it's another chemical, I don't know.

Q How did that threaten you?

A Well, if somebody pointed a gun at you wouldn't that be threatening you?

Q I'm asking the questions. You have described what you thought was a can of Mace. I have asked you how that can of Mace threatened you. Now tell me how it happened?

A Well, if they spray it on you that is the same that is a threat.

Q Did anybody spray any Mace on you?

A They don't convict you of murder until you have murdered anybody.

Q All right. I'm asking the questions and I want answers. Now, the question was how aside from coming into your apartment without a warrant were you threatened—

A —with the officers.

Q —with the can of Mace and describe it. How did that, how did the can of Mace threaten you?

A When you hold a can of Mace in your hand like you are ready for trouble.

Q Did anybody do that?

A Yeah. A cop, one of the plain clothed officers had this particular thing in his

hand when he entered my apartment. There was no need for it.

Q He came in with it in his hand?

A Right.

Q All right. And what did he do with it, precisely what did he do with it?

A Held it in his hand.

Q All right. Then describe the position in which he held it.

A I imagine it was various positions. When you walk your hand changes positions.

\* \* \* \* \* \*

Q All right. How did the officer hold it?

A In his hand.

Q Down by his side, up over his head, where was it?

A In his hand. However, he had his arm down towards his side (deponent indicating) in a normal position like you walk, like when you are standing upright.

[Wise deposition, pp. 25–27].

Wise has demonstrated no substantial federal rights in support of his § 1983 assault claim. He has not alleged police conduct so egregious that it amounts to a deprivation of constitutional dimensions. In our view, Wise has not effectively demonstrated a simple common law claim for assault.

■ Wise's § 1983 trespass claim is predicated on his allegation that Bravo entered his apartment without consent or process of law. Wise's deposition demonstrates that there is no merit in this allegation. In any event, a trespass to property, negligent or intentional, is a common law tort; it does not infringe the federal constitution. *Commonwealth of Pennsylvania ex rel. Feiling v. Sincavage*, 313 F.Supp. 967 (W.D.Pa.1970); aff'd, 439 F.2d 1133 (3d Cir. 1971) [as applied to Section 1983 action against police for search of a home]; *Kao v. Red Lion Municipal Authority*, 381 F.Supp. 1163 (M.D.Pa.1974). The trial court proper-

ly granted Bravo's motion for summary judgment.

### III.

■ Wise claims the trial court erred by granting the City's motion for dismissal.

The trial court relied on *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) as authority for the dismissal of the City and Department from the action. *Monroe* established that a municipality was not a person within the meaning of Sections 1983 and 1985.

Subsequent to the trial court's ruling in this case, *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) was decided. In *Monell*, the Supreme Court extensively reviewed the legislative history of § 1983 and concluded that local governmental bodies are "persons" and subject to suit under § 1983. However, the Court held that a local governmental body is liable under § 1983 only when "a police statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" has caused the unconstitutional conduct. Thus, the Court concluded that respondeat superior was not a permissible theory for holding a local governmental body liable for constitutional violations of its employees. *See McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1979). Moreover, "the mere right to control without any control having been exercised and without any failure to supervise is not enough to support Section 1983 liability." *Monell, supra*, 436 U.S. at n. 58, 98 S.Ct. at 2037.

There is no allegation that the City "acted" through its policies, formally or informally adopted, to deprive Wise of any constitutional rights. Thus, inasmuch as the only theory under which the City could be held liable is respondeat superior, the action was properly dismissed as to the City. *See Reimer v. Short*, 578 F.2d 621 (5th Cir. 1978), cert. denied, 440 U.S. 947, 99 S.Ct. 1425, 59 L.Ed.2d 635 (1979).

## IV.

Finally, Wise contends that the trial court erred by striking certain paragraphs from his amended complaint.

The stricken paragraphs were:

11. On 4 April 1978, plaintiff attempted to telephone his former wife to arrange visitation with his child. At approximately 10:00 p.m. at night, the telephone at plaintiff's former residence was answered by defendant Bravo.

13. Plaintiff has been psychologically humiliated in the presence of his daughter by his former wife's paramour.

[R., Vol. I, p. 3].

The trial court found these paragraphs to be "impertinent, immaterial and harassing to defendant Bravo." [R., Vol. I, p. 14].

In light of our holding that any alleged deprivation advanced by Wise herein was de minimus for federal constitutional purposes, we need not reach this contention.

WE AFFIRM.

SEYMOUR, Circuit Judge, concurring.

Although I concur in the result in this case, I write separately because the majority opinion fails to clearly articulate the interrelationship of constitutional and state law in the area of family relations.

The right to a relationship with one's child is not created either by the Constitution or by state statute. I believe it is one of those fundamental, inherent rights of every individual that predates both the federal Constitution and the state laws. Like the right to marry and have children and the right to live where one wants and pursue a livelihood by any lawful means, this right constitutes a "liberty" interest. As such it is protected by the due process clause of the Constitution. *See generally* Annot., "Supreme Court's Views as to Concept of 'Liberty' Under Due Process Clauses of Fifth and Fourteenth Amendments," 47 L.Ed.2d 975 (1977).

The Ninth Amendment acknowledged the prior existence of fundamental rights when it said: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S.Const. amend. IX. In a long line of decisions, the Supreme Court has recognized that matters involving marriage, procreation, and the parent-child relationship are among those fundamental "liberty" interests protected by the Constitution. Thus, the decision in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), was recently described by the Supreme Court as founded on the "constitutional underpinning of . . . a recognition that the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment includes not only the freedoms explicitly mentioned in the Bill of Rights, but also a freedom of personal choice in certain matters of marriage and family life." *Harris v. McRae*, 448 U.S. 297, 312, and n.18, 100 S.Ct. 2671, 2686, 65 L.Ed.2d 784 (1980).

In *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), the Supreme Court struck down a state law because it interfered with the constitutional right to marry.

"These statutes also deprive the Lovings of liberty without due process of law in violation of the Due Process Clause of the Fourteenth Amendment. The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men.

"Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival. *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655, 1660 (1942). See also *Maynard v. Hill*, 125 U.S. 190, 8 S.Ct. 723, 31 L.Ed. 654 (1888). . . . Under our Constitution, the freedom to marry, or not marry, a person of another race resides with the individual and cannot be infringed by the State."

*Id.* at 12, 87 S.Ct. at 1823.

*Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed.

645 (1944), *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), and *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), are all cases in which state regulation was struck down by the Court because it unreasonably interfered "with the liberty of parents and guardians to direct the upbringing and education of children under their control." *Pierce*, 268 U.S. at 534–35, 45 S.Ct. at 573.

In *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Court refused to apply a state statute which deprived unwed fathers of the custody of their children. The Court found that the right of a parent to conceive and raise his children, to care for and nurture them, is a fundamental right. The Court stated that "[t]he private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection." *Id.* at 651, 92 S.Ct. at 1212. The Court then applied strict judicial scrutiny and found that although the state did have a legitimate end, the statute used to achieve that end was constitutionally indefensible because the state law was not the narrowest, least restrictive means available to ensure the welfare of the children.

And in a unanimous decision in *Quilloin v. Walcott*, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978), the Court said:

"*We have recognized on numerous occasions that the relationship between parent and child is constitutionally* protected. See, e.g., *Wisconsin v. Yoder*, 406 U.S. 205, 231–233, 92 S.Ct. 1526, 1541–42, 32 L.Ed.2d 15 (1972); *Stanley v. Illinois*, supra; *Meyer v. Nebraska*, 262 U.S. 390, 399–401, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042, 29 A.L.R. 1446 (1923). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed.

645 (1944). And it is now firmly established that 'freedom of personal choice in matters of . . . family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.' *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 639–640, 94 S.Ct. 791, 796, 39 L.Ed.2d 52, 67 Ohio Ops.2d 126 (1974)." *Id.* at 255, 98 S.Ct. at 554 (emphasis added).

That is not to say that the *regulation* of marriage and other family matters is not peculiarly within the province of the states. As the Court said in *Loving v. Virginia*, 388 U.S. at 7, "marriage is a social relation subject to the State's police power." But the Court has also made clear that state regulation may not impinge upon the constitutionally protected right to marry, or determine matters of procreation, contraception, abortion, and the right to maintain a parent-child relationship unless the state can show an overriding, compelling state interest and the use of the narrowest, least restrictive means to effect that end. The state must also provide procedural due process.

Viewed in this context, the majority's statement that "there is no substantive federal constitutional . . . law *governing* family relationships" is misleading. Slip op. at 6 (emphasis added). The Constitution does "govern" such rights in the sense that it is the ultimate "protector" of them. It is also confusing to say that "[t]he substantive aspect of the subject of family law and domestic relations is one uniquely within the province of the respective states." *Id.* It is more accurate to say that the *regulation* of the subject is uniquely within the province of the states.

The majority's statement that section 1983 "should not be viewed as a vehicle to resolve a dispute involving visitation rights," at 1333, is accurate as applied to cases where the dispute is between parents or other relatives of the child. *See, e.g., Crouch v. Crouch*, 566 F.2d 486 (5th Cir. 1978). When the state is merely *regulating* the custody and visitation rights as between

parents under the normal state judicial procedures governing divorce and custody, no constitutional question arises because the state has a compelling interest in the child and due process is provided. However, when an official of the state interferes with the parent-child relationship in some egregious manner outside the state judicial system, without procedural or substantive due process, section 1983 may be invoked. Under those circumstances, the state remedies referred to by the majority opinion at 7–8 are irrelevant. "[I]f the actions of law enforcement officers result in a deprivation of a federally protected right, the existence of an adequate state remedy does not bar recovery under 42 U.S.C. Sec. 1983." *Clappier v. Flynn*, 605 F.2d 519, 528 (10th Cir. 1979).

The majority cites with apparent approval the trial court's statement that "[t]o the extent plaintiff is attempting to assert claims relating to interference with his visitation rights . . . no federal or constitutional claim is alleged." At 1332. If the majority's holding in this case rests on the premise that an interference with visitation rights under color of state law can never rise to the level of a constitutional deprivation, I must respectfully disagree. The noncustodial divorced parent has no way to implement the constitutionally protected right to maintain a parental relationship with his child except through visitation. To acknowledge the protected status of the relationship as the majority does, and yet deny protection under section 1983 to visitation, which is the exclusive means of effecting that right, is to negate the right completely.

The majority concludes that any deprivation of Wise's visitation rights was so insubstantial in duration and effect that it failed to rise to a federal constitutional level. Because I agree that the alleged deprivation here was de minimus for constitutional purposes, I concur in the result.