Yvonne LESTER and Olga Stewart, Plaintiffs,

v.

Stanley BREZENOFF, individually and as Commissioner of Social Services; Charlie Scroggins, individually and as an employee of the New York City Department of Social Services; City of New York, Department of Social Services, Defendants.

No. 81 CIV 0044 (JMcL).

United States District Court, E. D. New York.

Sept. 30, 1982.

Martin Guggenheim, New York, N. Y., for plaintiffs.

Allen G. Schwartz, Corporation Counsel, New York, N. Y., for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

Plaintiffs, the mother and grandmother of a nine-year-old girl who was once adjudicated an abused child, bring this action for declaratory relief and damages against the Department of Social Services, the Commissioner of that Department, and one of its employees. Plaintiffs allege that defendants wrongfully removed the child from the home of her grandmother and kept the child in state custody without judicial approval or review, and without notice or an opportunity to be heard. The actions arise under 42 U.S.C. § 1983. Jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343(3) and (4). The issuance of declaratory relief is authorized by 28 U.S.C. § 2201 and by Rule 57 of the Federal Rules of Civil Procedure.

Plaintiffs have moved this Court for partial summary judgment, and defendants have responded with a summary judgment motion of their own. For the reasons below, defendants' motion is granted.

## FACTS

On January 10, 1978, the child was admitted to Brookdale Hospital in Brooklyn, New York, after a school teacher had observed injuries to the child which she believed were the result of excessive corporal punishment. On the following day, a petition was filed in the Family Court, Kings County, alleging that Mrs. Lester was an abusive parent. The Court issued an order that the child be remanded to the custody of the Commissioner of Social Services pending further court review.

Upon her release from the hospital on January 25, the child was placed in a foster home, where she apparently remained until sometime in April. At that time, the Family Court paroled the child to the custody of her grandmother, and issued a temporary order of protection prohibiting Yvonne Lester from interfering with the discipline of her child. On May 22, 1978, pursuant to Family Court Act § 1055, the Family Court entered a final order of disposition, placing the child with the Commissioner of Social Services for an 18-month period. The disposition was based on the recommendation of the Department of Social Services that the child be paroled to reside with her extended family.

The child lived with her grandmother from April 3, 1978, until October 22, 1979. The two lived in Brooklyn until approximately June 1979, at which time they moved to Yvonne Lester's home in Queens County. (Lester Affidavit paragraphs 11 and 12; Stewart Affidavit paragraph 7). On October 22, the child was seen at school by a guidance counselor who telephoned the Department of Social Services to report her conclusion that the child had been the victim of regular beatings. (Macieras Affidavit paragraph 2). On the same day, acting

upon the telephone call from the guidance counselor, defendant Scroggins, with the sanction of the Department, removed the child from the care of her grandmother, and again placed her in a temporary foster care center. It is undisputed that plaintiffs were not notified prior to the removal.

The child remained in the temporary foster care center until December 11, 1979. At that time the Family Court ordered that she be paroled back into the custody of her grandmother, pending final resolution of the Department's request for extension of the placement order. The original court order had expired on November 22, 1979, and the defendants had not filed an extension request until November 26. Finally, on December 17, the Family Court dismissed the request for extension of placement because of untimely filing.

### DISCUSSION OF LAW

The discussion of plaintiffs' claims must be bifurcated: the period of time extending from the removal of the child on October 22, 1979 until the expiration of the court order on November 22 raises issues different from those posed by the Department's retention of the child between November 22 and December 11.

A. *Removal of the Child and Retention until November 22, 1979*

■ Plaintiffs stress that the seizure on October 22 effected a deprivation of their rights to notice and a hearing, inasmuch as no court order was sought or obtained prior to the seizure. It is undisputed, however, that on October 22, the Commissioner of Social Services was vested with legal custody of the child, pursuant to an order of the Family Court. The order provided the Commissioner with discretion in selecting an appropriate living arrangement for the child.

Plaintiffs attempt to avoid this result by citing several sections of the Family Court Act, but their reliance is misplaced. Section 1024 of the Act, "Emergency removal without court order," and Section 1026, which delineates procedures to be followed

in the case of "an emergency removal of a child from his home without court order," are both concerned with an emergency situation in which the safety of the child would be threatened without prompt removal. In the present case, the outstanding court order represented a judicial determination that the Commissioner of Social Services was qualified to render removal decisions without further court action.

B. *Period of time following the November 22 expiration of the court order.*

The subsequent period of time, however, is more troubling. Although defendants assert that a good faith effort was made to obtain an extension of the court order by the November 22 deadline, (Affidavit of Ferris, paragraph 7), the plain fact is that the petition was not filed until November 26. Indeed, the Family Court rejected the extension petition precisely because of this late filing. The Court cannot just wink at the administrative oversight that resulted in improperly retaining control of the child without a court order. For reasons which shall become clear, however, none of the named defendants is liable.

*Department of Social Services*

■ The outer boundary of municipal liability in 1983 cases was fixed by the Supreme Court in *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell,* the Court held that a municipality is not liable for Section 1983 violations under the *respondeat superior* principle. *Id.* at 691, 98 S.Ct. at 2036. Rather, it is necessary to demonstrate that the municipality engaged in a custom, policy, or practice similar to that challenged in the case under consideration. *Id.* at 694, 98 S.Ct. at 2037. Such a demonstration permits an inference that the practice bears the imprimatur of the municipality in question. *Id.*

Federal courts have struggled with the issue of precisely what constitutes a "pattern or practice" sufficient to impose liability on a municipality. *See, e.g., Hays v. Jefferson County, Ky.,* 668 F.2d 869 (6th Cir. 1982); *Dominguez v. Beame,* 603 F.2d 337 (2d Cir. 1979). It is settled, however,

that liability will not attach in the absence of at least some allegations of such a custom or practice. *Werch v. City of Berlin,* 673 F.2d 192, 195 (7th Cir. 1982); *Wise v. Bravo,* 666 F.2d 1328, 1335 (10th Cir. 1981); *Dominguez, supra,* at 441. Plaintiffs do not allege that the Department of Social Services was acting pursuant to any custom, policy, practice, or regulation in filing a late petition, and in thereby holding the child without authority. Accordingly, the *Monell* standard has not been satisfied, and the Department of Social Services is not liable under Section 1983.

*Defendant Brezenoff*

█ It matters not, for purposes of this opinion, whether Mr. Brezenoff is considered in his individual capacity, or in his capacity as Commissioner of Social Services. There is no evidence that he was personally involved in the late filing, and *Monell* makes clear that liability of named officials must be bottomed on personal involvement. *Id.* 436 U.S. at 683, 691–92, 98 S.Ct. at 2032, 2036–2037. Therefore, plaintiffs have not stated a cognizable claim against defendant Brezenoff.

*Defendant Scroggins*

The claim against Mr. Scroggins may be dismissed with the following observation: as stated earlier, the Department had a legal right to seize the child when it did. Because the sole allegation against Scroggins is that he effected the seizure, he cannot be liable.[1]

CONCLUSION

For the above stated reasons, defendants' motion for summary judgment is granted.

Accordingly, plaintiffs' motion for partial summary judgment is denied.

SO ORDERED.

---

1. The parties have also extensively briefed the issue of possible immunity for the actions of defendants in this case. *Monell* merely decided that there could be no absolute immunity afforded local governmental entities; the Court expressly declined to pass on the question of whether a *good faith* immunity would be recognized. *Monell, supra,* at 701. The recent Supreme Court case of *Harlow v. Fitzgerald,* —— U.S. ——, ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) defined the applicable good faith standard as follows: "government offi-cials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." It is questionable whether, in this case, defendants' late filing would satisfy the good faith standard established in *Harlow.* Disposition of this issue is unnecessary, however, because it has already been established that plaintiffs have not named any properly liable defendants.