**V-1 OIL COMPANY, a Wyoming corporation, Plaintiff,**

v.

**STATE OF WYOMING, DEPARTMENT OF ENVIRONMENTAL QUALITY, and Steven P. Gerber, Defendants.**

**No. C88-0155J.**

United States District Court,
D. Wyoming.

Sept. 28, 1988.

F.M. Andrews, Jr., Andrews and Anderson, Riverton, Wyo., for plaintiff.

Karen Byrne and Steve Jones, Atty. Gen.'s Office, Cheyenne, Wyo., for defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JOHNSON, District Judge.

I. Standard on Summary Judgment

A party moving for summary judgment has the burden of showing that there is no genuine issue as to any material fact, and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Summary judgment is appropriate when a moving party points to an absence of evidence to support the nonmoving party's case; a moving party is not required to support its motion with affidavits or other similar materials *negating* the nonmovant's claim. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

A material fact is one that might affect the outcome of a suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue as to a material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* A moving party

is entitled to judgment as a matter of law where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 106 S.Ct. at 2553. The evidence of the nonmoving party is deemed true and all reasonable inferences are drawn in his favor. *Anderson*, 106 S.Ct. at 2514. The material facts in this case are undisputed.

II. Background

Steven P. Gerber is the Northwest District Supervisor for the Wyoming Department of Environmental Quality, Water Quality Division. That district includes Fremont County, Wyoming, the location of Lander, Wyoming. Affidavit of Steven P. Gerber, ¶ 1. As part of Mr. Gerber's duties, he investigates discharges of pollution, such as petroleum products, into groundwater. *Id.* at ¶ 5. On 28 April 1988 Mr. Gerber was aware that the V–1 Oil station in Lander, Wyoming, was a source of gasoline pollution. Investigations previously conducted had indicated that this station was the source of nearby groundwater pollution. *Id.* at ¶¶ 3–4.

On 28 April 1988, at approximately 11:00 a.m., Mr. Gerber drove by the V–1 Oil station in Lander, Wyoming. He noticed that concrete over underground storage tanks was being removed. Mr. Gerber stopped and asked Rick Evans, manager of the V–1 Oil station, what they were doing. Mr. Evans refused to say and asked Mr. Gerber to leave. Mr. Gerber left. At approximately 3:15 p.m. Mr. Gerber drove by the station and saw Leonard Wood, area supervisor for V–1 Oil. Mr. Gerber stopped and asked Mr. Wood what they were doing. Mr. Wood refused to say but stated that Mr. Gerber was not welcome on the property. Mr. Gerber left the property. *Id.* at ¶¶ 7–8.

Throughout the day Mr. Gerber had been on the telephone with Steve Jones, Senior Assistant Attorney General for Wyoming, discussing a possible inspection of the underground storage tank area. *Id.* at ¶ 9. Mr. Jones sought a hearing with either Judge Ranck or Judge Kail, seeking a court order allowing inspection. A sufficiently immediate hearing could not be obtained. Affidavit of Steve Jones, ¶¶ 5–7. Mr. Jones consulted with three other attorneys, and all agreed that Wyo.Stat. § 35–11–109(a)(vi) (Supp. June 1988) permitted a warrantless inspection. *Id.* at ¶¶ 8–9.

At approximately 7:00 p.m. L.M. Chipley, Lander City Attorney, telephoned Mr. Jones about the situation. He agreed with Mr. Jones's interpretation of the statute, and he further agreed that he and a Lander policeman would accompany Mr. Gerber during his inspection. The policeman's presence was to deter violence. *Id.* at ¶ 11.

At approximately 8:20 p.m. Mr. Gerber, Mr. Chipley, and Lt. Metzger entered the V–1 premises. Mr. Gerber identified himself to Steve Drake, the attendant on duty. Mr. Gerber handed him a business card and informed him of the imminent investigation. Affidavit of Steven Gerber at ¶ 13. Acting under instructions, Mr. Drake told Mr. Gerber to wait until Mr. Evans had arrived. Deposition of Steve Drake at p. 29. Mr. Gerber instead inspected the excavation area. The tops of the underground storage tanks had been uncovered, indicating to Mr. Gerber that the tanks were not being removed, but that the tanks and lines leading up to the tanks were being tested for tightness and integrity. Mr. Gerber noticed very strong hydrocarbon odors. Affidavit of Steven Gerber at ¶¶ 14–15. He collected a soil sample from soil around the underground storage tank closest to the station. Lt. Metzger received an accident call requiring him to leave. After being informed of this call, Mr. Gerber felt that he should also leave. He informed Mr. Drake that he was leaving, but upon request agreed to stay until Rick Evans arrived. Mr. Gerber gave the soil sample to Lt. Metzger as he left. *Id.* at ¶¶ 16–18.

Rick Evans arrived at the station at approximately 8:30 p.m. He told Mr. Gerber to put the soil sample back. Mr. Gerber informed him that Lt. Metzger had the sample. Mr. Evans asked Mr. Gerber to leave, and he did so. *Id.* at ¶¶ 19–23. Mr. Gerber later obtained the soil sample from

Lt. Metzger. He stored it for safekeeping at the DEQ office. In accordance with Wyo.Stat. § 35–11–109(a)(vi), Mr. Gerber supplied Mr. Wood and V–1 Oil's attorney with a report of the investigation. *Id.* at ¶ 23.

On 27 May 1988 V–1 Oil filed a complaint in this court under 42 U.S.C. § 1983, alleging deprivation of its rights secured by the fourth, fifth, and fourteenth amendments. Named as defendants were the state of Wyoming, the Department of Environmental Quality, and Steven P. Gerber. On 12 August 1988 defendants filed a motion for summary judgment. In V–1 Oil's brief opposing the motion, it stated that "[t]he defendant State of Wyoming's Motion for Summary Judgment should be granted, pursuant to the State's immunity as provided by the 11th Amendment to the Constitution."[1] The court agrees with this view. The eleventh amendment prohibits suits in federal court against a state or one of its agencies or departments unless consent is shown. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Meade v. Grubbs,* 841 F.2d 1512, 1524–26 (10th Cir.1988). No consent has been shown. V–1 Oil argues that the suit should proceed against Steven P. Gerber in his individual capacity.[2]

### III. The Warrantless Search

■ The question arises whether the warrantless search was permissible. In deciding this, the court looks to Wyo.Stat. § 35–11–109(a)(vi), which provides as follows:

(a) In addition to any other powers and duties imposed by law, the director of the department shall:

(vi) Designate authorized officers, employees or representatives of the department to enter and inspect any property, premise or place, except private residences, on or at which an air, water or land pollution source is located or is being constructed or installed, or any premises in which any records required to be maintained by a surface coal mining permittee are located. Persons so designated may inspect and copy any records during normal office hours, and inspect any monitoring equipment or method of operation required to be maintained pursuant to this act at any reasonable time upon presentation of appropriate credentials, and without delay, for the purpose of investigating actual or potential sources of air, water or land pollution and for determining compliance or noncompliance with this act, and any rules, regulations, standards, permits or orders promulgated hereunder. For surface coal mining operations, right of entry to or inspection of any operation, premises, records or equipment shall not require advance notice. The owner, occupant or operator shall receive a duplicate copy of all reports made as a result of such inspections within thirty (30) days. The department shall reimburse any operator for the reasonable costs incurred in producing copies of the records requested by the department under this section[.]

Defendant contends that this statute requires a warrant or a court order before an inspection may be made. This court disagrees.

The statute allows inspections under stated conditions. First, under the first sentence of subsection (vi), the inspector must qualify as one entitled to inspect. Mr. Gerber qualifies. Affidavit of Randolph Wood at ¶ 3. Second, provided the

---

1. At the 9 September 1988 motion hearing, plaintiff's counsel informed the court that he wished to reconsider this concession. The court gave him time to respond in writing. On 26 September 1988 the court received a letter from plaintiff's counsel stating that "I have not found any cases giving the Plaintiff any relief in this matter."

2. The eleventh amendment does not bar suit against officials in their individual capacities since "[a] victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him." *Meade v. Grubbs,* 841 F.2d 1512, 1526 n. 16 (10th Cir.1988) (quoting *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985)).

inspection is made at any reasonable time upon presentation of appropriate credentials and without delay, such a designated employee may inspect any method of operation required to be maintained pursuant to the Wyoming Environmental Quality Act, Wyo.Stat. §§ 35–11–101 through 35–11–1304 (Supp. June 1988). This authority is given to investigate actual or potential sources of air, water, or land pollution and to determine compliance or noncompliance with this act, and any rules, regulations, standards, permits, or orders promulgated under it. No one disputes that Mr. Gerber's inspection occurred while the station was open for business. No one disputes that Mr. Gerber presented appropriate credentials and inspected without delay.[3] Because all conditions imposed by the statute were met, the court concludes that the inspection complied with the statute.

Plaintiff V–1 Oil seems to contend that a warrant was required since the statute nowhere mentions the words "warrantless search." In *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), the Court examined a statute allowing inspections in the automobile junk yard industry. The Court concluded that warrantless searches were allowed under the statute even though the words "warrantless search" were not contained within it. *Id.* 107 S.Ct. at 2639 n. 1. The Court later noted that "[n]umerous States have provisions for the warrantless inspections of vehicle dismantlers and automobile junk yards" and listed as an example Wyo.Stat. § 31–13–112(e) (1987). *Id.* at 2641 n. 11. This Wyoming statute also does not include the words "warrantless search." Having determined that Mr. Gerber was entitled to conduct a warrantless inspection under the Wyoming statute, the court now turns to the issue of whether the warrantless inspection complied with the United States Constitution.

## IV. Warrantless Administrative Searches

■ The fourth amendment prohibits unreasonable searches and seizures of com-

mercial premises, as well as private homes. *See v. City of Seattle*, 387 U.S. 541, 543, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943 (1967). A business operator's reasonable expectation of privacy in commercial property extends to administrative inspections designed to enforce regulatory statutes. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312–13, 98 S.Ct. 1816, 1820–21, 56 L.Ed.2d 305 (1978). This expectation of privacy in commercial premises is less than the expectation in an individual's home. *Donovan v. Dewey*, 452 U.S. 594, 598–99, 101 S.Ct. 2534, 2537–38, 69 L.Ed.2d 262 (1981). The expectation of privacy in "closely regulated" industries is particularly attenuated. *New York v. Burger*, 107 S.Ct. at 2642. "Certain industries have such a history of government oversight that no reasonable expectation of privacy ... could exist for a proprietor over the stock of such an enterprise." *Id.* (quoting *Marshall*, 436 U.S. at 313, 98 S.Ct. at 1820–21). *See New York v. Burger*, 107 S.Ct. 2636 (vehicle dismantlers and automobile junk yards); *Donovan v. Dewey*, 452 U.S. 594, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981) (stone quarries); *United States v. Biswell*, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972) (firearms); *Colonnade Corporation v. United States*, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970) (liquor dealers).

Upon fulfillment of three criteria, a warrantless search of a pervasively regulated business will be deemed reasonable. *New York v. Burger*, 107 S.Ct. at 2643–44. First, there must be "a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made." *Id.* at 2644. This is met by health and safety dangers resulting from leaks in underground gasoline storage tanks. Second, "the warrantless inspections must be 'necessary to further [the] regulatory scheme.'" *Id.* (quoting *Donovan v. Dewey*, 452 U.S. at 600, 101 S.Ct. at 2538–39). This condition is also

---

**3.** The court simply notes that the requirements of the statute were met. The relevant inquiry in a suit under 42 U.S.C. § 1983, however, is whether plaintiff was deprived of a federal right. *See Wise v. Bravo*, 666 F.2d 1328, 1331 (10th Cir.1981). That inquiry focuses on whether the statute allows warrantless inspections, not whether its conditions were met.

met. The State made an effort to obtain a court order. Only after it became obvious that the order could not be obtained while the tanks were exposed did the State abandon that effort. Third, "the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers." *New York v. Burger*, 107 S.Ct. at 2644 (citing *Marshall*, 436 U.S. at 323, 98 S.Ct. at 1825-26). The statute in question does both.

Those engaging in the business of storing and dispensing gasoline have chosen to engage in a pervasively regulated business. Wyoming has passed many laws limiting their conduct. *See, e.g.*, The Wyoming Environmental Quality Act, Wyo.Stat. §§ 35-11-101 through 35-11-1304; Wyo.Stat. §§ 39-6-201 through 39-6-214 (licensing, taxing, and record keeping of gasoline distributors); Wyo. Stat. § 15-1-103(a)(xxviii) (Cum.Supp.1988) (The governing bodies of all cities and towns may: Regulate or prevent the storage, use and transportation of any combustible or explosive material within the corporate limits or within a given distance thereof); Wyoming Department of Environmental Quality Rules and Regulations, Water Quality Division, Chapter IV, Regulations for Releases of Oil and Hazardous Substances into Waters of the State of Wyoming. Federal law also pervasively regulates underground storage tanks. *See* 42 U.S.C. §§ 6991 through 6991i (Cum. Supp. May 1988).[4]

In light of this extensive regulation, the court is puzzled by the attitude of V-1 Oil as expressed in the deposition of its employee, Rick Evans: "We just allow no inspections, no nothing, without permission." "[I]t really shouldn't matter to them. It's our business what we're doing out there." Deposition of Rick Evans at 7, 25. Those views do not conform with the scheme set forth in the statutes.

## V. Qualified Immunity

■ As an executive official, Steven Gerber is entitled to assert qualified immunity from this suit. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90

---

**4.** These statutes require that owners of underground storage tanks (containing petroleum, including crude oil or any fraction thereof, which is liquid at standard conditions of temperature and pressure) provide information relating to the tank's existence, size, type, location, and uses. 42 U.S.C. § 6991a(a). Extremely detailed regulations relating to release detection, prevention, and correction are mandated under the statutes. 42 U.S.C. § 6991b. Of particular interest is the statute governing inspection, monitoring, testing and corrective action, which provides in part as follows:

(a) Furnishing information. For the purposes of developing or assisting in the development of any regulation, conducting any study, [taking any corrective action] or enforcing the provisions of this subtitle [42 USCS §§ 6991 et seq.], any owner or operator of an underground storage tank (or any tank subject to study under section 9009 [42 USCS § 6991h] that is used for storing regulated substances) shall, upon request of any officer, employee or representative of the Environmental Protection Agency, duly designated by the Administrator, or upon request of any duly designated officer, employee, or representative of a State acting pursuant to subsection (h)(7) of section 9003 [42 USCS § 6991c(h)(7) ] or with an approved program, furnish information relating to such tanks, their associated equipment, their contents, conduct monitoring or testing, permit such officer at all reasonable times to have access to, and to copy all records relating to such tanks and permit such officer to have access for corrective action. For the purposes of developing or assisting in the development of any regulation, conducting any study, taking corrective action, or enforcing the provisions of this subtitle [42 USCS §§ 6991 et seq.], such officers, employees, or representatives are authorized—

(1) to enter at reasonable times any establishment or other place where an underground storage tank is located;

(2) to inspect and obtain samples from any person of any regulated substances contained in such tank;

(3) to conduct monitoring or testing of the tanks, associated equipment, contents, or surrounding soils, air, surface water or ground water; and

(4) to take corrective action.

Each such inspection shall be commenced and completed with reasonable promptness. 42 U.S.C.S. § 6991d(a). The court notes that inspections are not conditioned on obtaining a court order or warrant. The court further observes that the statutes pervasively regulate owners of underground storage tanks such as V-1 Oil's.

(1974). In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), the Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." This approach removed subjective good faith from the analysis and centered on objective good faith. Objective good faith "involves a presumptive knowledge of and respect for 'basic, unquestioned constitutional rights.'" *Id.* at 815, 102 S.Ct. at 2737 (quoting *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1985)).

In *Anderson v. Creighton,* — U.S. —, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the Court further refined its objective good faith analysis. Seeking to avoid a "rule of virtually unqualified liability simply by alleging violation of extremely abstract rights," the Court declared that a violation of a constitutional right would not necessarily defeat qualified immunity. Qualified immunity would still apply, the Court reasoned, unless the "contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.,* 107 S.Ct. at 3039. *See also Watson v. City of Kansas City, Kansas,* 857 F.2d 690, 697 (10th Cir. 1988). Otherwise stated, the question is whether a reasonable official could have believed his conduct lawful "in light of clearly established law and the information the searching officers possessed." *Anderson v. Creighton,* 107 S.Ct. at 3040.

In this case, there is no clearly established law prohibiting Mr. Gerber's actions. In fact, as this court has found, the law indicates the contrary. The statute does not require a warrant, and warrantless searches of pervasively regulated industries are permissible. Mr. Gerber's duties include investigating discharges of pollution into groundwater. He knew that previous investigations had indicated that V-1 Oil's station was the source of nearby groundwater pollution. He could reasonably expect that the tanks would not long remain exposed. Based upon the status of the law and the information he possessed, the court must conclude that a reasonable official in his position would not understand that he was violating a right. As earlier stated the court does not believe that he did violate a right.

V-1 Oil carries the burden of convincing this court that the constitutional rights relied upon were clearly established. *Pueblo Neighborhood Health Centers v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988) (citing *Lutz v. Weld County School District,* 784 F.2d 340, 342-43 (10th Cir.1986)). V-1 Oil must do more than merely identify in the abstract a clearly established right and allege that defendant has violated it. *Losavio,* 847 F.2d at 645 (citing *Anderson v. Creighton,* 107 S.Ct. at 3039 n. 2). V-1 Oil has not met these burdens. It is therefore

ORDERED that defendant's motion for summary judgment is GRANTED.