Mark A. ADAMS, Plaintiff–Appellant,

v.

CITY OF AUBURN, Defendant–
Appellee.

No. 01–3875.

United States Court of Appeals,
Seventh Circuit.

Submitted March 20, 2002.*

Decided March 25, 2002.

Rehearing and Rehearing En Banc
Denied April 24, 2002.

Before BAUER, KANNE, and DIANE
P. WOOD, Circuit Judges.

### ORDER

Mark Adams sued the City of Auburn, Indiana, under 42 U.S.C. § 1983, alleging that city police officers refused to enforce a visitation order entered as part of his divorce decree and thereby deprived him of his right to associate with his son. A magistrate judge, presiding by consent under 28 U.S.C. § 636(c), granted judgment for the city, and Adams appeals.

The parties did not present any evidence outside the complaint in the district court, and without contesting Adams's version of events, the city moved for judgment as a matter of law. In his complaint Adams alleges that during one week in September 2000 he three times called the police because he and his ex-wife could not agree on visitation. According to Adams, he unsuccessfully sought to pick up his son on September 23 for a birthday party and on both September 26 and September 27 for

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

scheduled visits. Adams asserts that he called police all three times after his ex-wife refused to produce their son and showed the visitation order authorizing the requested visits to the responding officers. Each time, however, the officers refused to do anything, telling Adams that it was "a civil matter" and that they had no power to enforce the visitation order.

According to Adams, the city deprived him of his right to exercise "care, custody, and control" over his son, *see Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), by directing its police department not to enforce visitation orders. Adams's argument is doomed, however, not only because federal courts typically do not adjudicate domestic relations disputes, *see Allen v. Allen*, 48 F.3d 259, 261–62 (7th Cir.1995), but also because as a rule the Constitution does not obligate municipalities to protect their citizens from one another, *see DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 196–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Archie v. City of Racine*, 847 F.2d 1211, 1220–23 (7th Cir.1988) (en banc). Here it was Adams's ex-wife, not the police officers or the city, who refused to turn over Adams's son; believing that his ex-wife violated the visitation order, Adams should have returned to the court that issued the order to have it enforced. *See* Ind.Code § 31–17–4–4 (authorizing injunctive relief); *id.* § 31–17–4–8 (authorizing contempt proceedings); *Williamson v. Creamer*, 722 N.E.2d 863, 866 (Ind.Ct.App.2000). Adams does not assert that the officers who responded to his call facilitated his ex-wife's obduracy by taking her side in the dispute, *see Johnson v. City of Evanston*, 250 F.3d 560, 562–63 (2001), and absent interference by the police, or a policy of discriminatory noninterference by the city, *see DeShaney*, 489 U.S. at 197 n. 3–neither

of which is alleged–Adams has failed to state a claim.

Moreover, even if the responding officers had sided with Adams's ex-wife, it is still doubtful, given the small amount of lost visitation time, that a constitutional violation would exist. As the magistrate judge observed, two courts have held that slight official interference with a non-custodial father's visitation rights does not cause constitutional injury. *See Zakrzewski v. Fox*, 87 F.3d 1011, 1014 (8th Cir. 1996); *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir.1981). But we need not explore the effect of these decisions, for Adams has not alleged official interference in the first place, and nondiscriminatory inaction by the city and its police does not afford him a basis for relief.

AFFIRMED.