Kenneth and Nancy SWANSON, Plaintiffs,

v.

Sheriff Lynn FIELDS, Sheriff of Crawford County, Kansas as an individual and in his official capacity; and Officer Dennis Jameson, a patrol officer for the City of Pittsburgh, Kansas, as an individual and in his official capacity, Defendants.

No. 91–4249–SAC.

United States District Court, D. Kansas.

Decided Feb. 12, 1993.

Corrected Nunc Pro Tunc Feb. 17, 1993.

Lee R. Barnett, Wakarusa, KS, C. Richard Comfort, Comfort Law Office, Minneapolis, KS, for plaintiffs.

Donald Patterson, Fisher, Patterson, Sayler & Smith, Topeka, KS, A. Bradley Bodamer, Morrison & Hecker, Overland Park, KS, for defendants.

## MEMORANDUM AND ORDER

CROW, District Judge.

The plaintiffs, Kenneth and Nancy Swanson, husband and wife, bring this civil rights action pursuant to 42 U.S.C. § 1983, arising out of their arrests on July 24, 1990. They allege the defendants acted wrongfully in arresting them, using force against them, charging them, and not returning property taken from their vehicle. Besides their federal civil rights action, the plaintiffs seek to recover under numerous state law claims. Both defendants have moved for summary judgment on all claims filed by the plaintiffs.

■ If no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law, the court shall grant a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The issue also must be based on a viable legal theory in order to be "genuine." *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d 342, 346 (10th Cir.1986), *cert. denied*, 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). An issue of fact is "material" if proof of it might affect the outcome of the lawsuit. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. In effect, the inquiry on a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512.

■ The movant's burden under Fed. R.Civ.P. 56 is to specify those portions of " 'the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits if any,' " which demonstrate the absence of a genuine issue of fact. *Windon Third Oil and Gas v. Federal Deposit Ins.*, 805 F.2d at 345 (quoting Fed.R.Civ.P. 56(c)). It may be sufficient for the movant to establish that the alleged factual issues are

without legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987). Summary judgment will be granted when the movant is able to show it is entitled to judgment as a matter of law based upon the uncontroverted, operative facts.

The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts that show a genuine issue for trial remains and that are supported by the kinds of evidentiary materials listed in Rule 56(c). *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun,* 956 F.2d 949, 951 (10th Cir.1992) (citations omitted). Because its evidence is deemed true and all reasonable inferences are drawn in its favor, the opposing party need come forth with only such evidence from which a fair-minded jury could return a verdict for it. *Windon,* 805 F.2d at 346.

■ More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). At the same time, a summary judgment motion is not the chance for a court to act as the jury and determine witness credibility, weigh the evidence, or decide upon competing inferences. *Windon,* 805 F.2d at 346.

For purposes of this motion, the court will accept the following facts as uncontroverted:

1. Around 6:45 p.m. on July 24, 1990, Kenneth and Nancy Swanson left their home in Pittsburg, Kansas, by car to visit Nancy's mother in Arma, Kansas. Kenneth was driving their white Chevrolet Suburban. After going several blocks and completing two turns, Kenneth observed a white Chevrolet Blazer following them. Kenneth immediately pulled over to the side of the road and moved his arms and hands to signal the white Blazer to pass him. While the Blazer slowly passed, the two drivers exchanged glares.

2. The Blazer was operated by the defendant Lynn Fields, Sheriff of Crawford County. He was not wearing his uniform, and the Blazer was not marked as a law enforcement vehicle. Fields passed the Suburban and pulled into a gravel parking lot a short distance away and turned his Blazer around so as to see approaching vehicles.

3. After the Blazer passed, Kenneth drove on and began to turn right when he saw the Blazer waiting in a parking lot farther down the street. Instead of completing the turn, Kenneth proceeded ahead in order to confront the driver of the Blazer. Kenneth drove up along side of the Blazer and asked: "Are you looking for trouble?"

4. The defendant Fields replied: "I'll give you plenty of trouble." Looking angry and upset, Fields climbed out of his Blazer and walked towards the Swanson's Suburban. Fields grabbed at the Suburban's doorpost, but Kenneth drove away and yelled at Fields "Go to hell." It is controverted whether Fields identified himself as the Sheriff at this time.

5. After leaving the parking lot, Kenneth went to the bypass around town and headed towards Arma. He then noticed that the Blazer was behind him again. The Swansons decided to leave the bypass and head towards the police station.

6. Fields followed the Swansons on the bypass and through the park at a safe distance and did not attempt to pull them over. Fields radioed the Pittsburg Police Department for backup.

7. As they neared the police station, the Swansons saw a Pittsburg police car approaching them from the right. Kenneth turned right at the corner and stopped immediately in the driving lane of the street. The police car driven by defendant Jameson pulled over to a stop on the opposite side of the road. Fields stopped his Blazer in a parking lot at the same corner just to the west of the Swanson's Suburban.

8. Kenneth exited the Suburban immediately and shouted to Officer Jameson that he wanted "that crazy son-of-a-bitch arrested." Officer Jameson directed Kenneth to move the Suburban to the side of the road. Ken-

neth did not follow these directions but ran directly to the rear of Fields' Blazer. Fields saw Kenneth come running towards him yelling, "You son-of-a-bitch." [1]

9. Kenneth's reason for running to the Blazer was to get its license plate number. When he reached the rear of the Blazer, Kenneth noticed that Fields was standing beside it. As he approached Kenneth, Fields announced he was the Sheriff and displayed his badge. Fields instantly grabbed Kenneth by the neck with one hand and used his other hand to handcuff Kenneth. Because of an injury to his left wrist over a year before, Kenneth tried to wrest his left arm free from Fields during the handcuffing. Fields never struck, hit, or kicked Kenneth during the arrest. Kenneth, however, perceived Fields' grasp on his neck as an attempt to choke him. Sheriff Fields is approximately six foot three inches tall and weighs two hundred and forty pounds. Kenneth is approximately five foot nine inches tall and weighs one hundred and sixty pounds.

10. Seeing the encounter between Fields and her husband, Nancy ran over to them. Officer Jameson attempted to restrain her by grabbing both of her arms. She resisted Jameson's efforts and yelled at Fields: "Let my husband go you son-of-a-bitch." She broke free from Jameson's grasp two different times in an effort to assist her husband. Jameson twice pushed Nancy up against the Blazer with enough force that her glasses fell off but her head never struck the Blazer. At some point, Nancy's arm struck Jameson on the head which caused him to arrest and handcuff her. Jameson then placed Nancy in the patrol car. Officer Jameson never struck or kicked her.

11. Sheriff Fields did not hit, kick, strike, or touch Nancy Swanson before or during the arrest. Nor did Officer Jameson ever kick or strike Kenneth Swanson. Kenneth does complain that Officer Jameson walked him over to the patrol car after the arrest using an upward pressure on his arms.

12. The Swansons were transported to the Pittsburg Police Station. Nancy suffered some pain and bruising from the handcuffs. At the station she complained that the handcuffs were too tight, and the officers removed them on her request and promise to cooperate. Kenneth also complained about tight handcuffs, and officers replaced the handcuffs with more comfortable ones. The plaintiffs never sought medical attention for the bruises and swelling in their wrists or for any other alleged physical injury resulting from this encounter.

13. At the Pittsburg Police Station, Kenneth was asked to take sobriety tests, but he refused. His driving license was suspended for one year as a result.

14. The plaintiffs were transported to the Crawford County Jail in Girard, Kansas, where they remained for approximately six hours. Kenneth executed a booking form there and learned that he was charged with driving under the influence, reckless driving, resisting arrest and disorderly conduct. Officer Jameson charged Nancy with battery to a law enforcement officer. After making arrangements with a bail bondsman and executing the bond, the Swansons were released and drove their Suburban home.

15. A complaint was filed in the Municipal Court of the City of Pittsburg. It was executed by Officer Jameson and charged Nancy Swanson with battery against a law enforcement officer. Officer Jameson also ticketed Kenneth Swanson with driving under the influence of intoxicants or drugs ("DUI"). Officer Jameson also completed an administrative form sent to the Kansas Department of Revenue, Division of Motor Vehicles, certifying that Kenneth had refused the blood-alcohol tests. As the reasonable grounds for his belief that Kenneth was under the influence of intoxicants, Officer Jameson marked the boxes for odor of alcoholic beverages, bloodshot eyes, poor balance or coordination, and difficulty in communicating.

16. Sheriff Fields issued tickets against Kenneth for disorderly conduct, driving left of center, resisting arrest and reckless driv-

---

1. The plaintiffs' citations to the record do not controvert that Officer Jameson directed Kenneth to move the Suburban to the side of the road or that Kenneth yelled, "You-son-of-a-bitch," at Fields when he ran to the rear of the Blazer.

ing. He left the tickets with his clerical staff who forwarded them to the County Attorney. Louis Barney, the Assistant County Attorney and prosecutor for the City of Pittsburg decided to prosecute the charges in the City Court of Pittsburg rather than the District Court of Crawford County.

17. Kenneth Swanson retained an attorney to represent him on these charges. Kenneth entered into a "D.U.I. Diversionary Agreement" dated October 1, 1990, wherein it was agreed that if Kenneth completed his obligations under the diversion program then the charges against him and his wife would be dismissed with prejudice.[2] By the agreement, Kenneth also waived his right to a speedy arraignment, preliminary examination and hearings, a speedy trial, and trial by jury. By the agreement, Kenneth also stipulated to certain facts as the basis on which the charge was brought:

> a. That on or about the 24th day of July, 1990, Kenneth Swanson, the above named Defendant, was operating a motor vehicle in the City of Pittsburg, Kansas.

> b. That Officer Dennis Jameson of the City of Pittsburg Police Department apprehended the Defendant on said day, and would testify that Defendant was operating a motor vehicle and charged with the offense of driving under the influence of intoxicating liquor and/or drugs, contrary to City Ordinance No. 21–702, as set out in the attached alcohol influence report.

Kenneth completed the diversion program and paid his fine. The charges filed in municipal court against him and his wife were then dismissed. The Assistant County Attorney on the same day also dismissed the charges against Kenneth Swanson pending in the District Court of Crawford County.

18. The sheriff's department removed from Swansons' Suburban certain tools as potential weapons, including a twelve-inch wrench, two camping hatchets, a steel bar, and a steel pipe. These items were invento-

ried. The procedure at the sheriff's department is to retain such property until the case is dismissed or resolved and return it upon request by the owner. If no request is made, the property is disposed of. The Swansons never personally or through their attorney requested the return of the tools after their charges were dismissed. Kenneth testified that he never made such a request out of fear of the police.

From what the plaintiffs have alleged in the pretrial order, the court has distilled the following claims under 42 U.S.C. § 1983. The defendants unlawfully seized or arrested the plaintiffs, used unreasonable force, maliciously prosecuted them in violation of their due process rights, and unlawfully seized the plaintiff's property. Before addressing these claims *seriatim*, the court believes this is a case worthy of quoting what the Tenth Circuit has said about § 1983 claims against law enforcement officers:

> A word is called for about the breadth of § 1983. The law creates no rights and is not a carte blanche statute authorizing recovery for negligence or other common law torts standing by themselves. Indeed, in order to recover in federal court through § 1983 a plaintiff must show: (1) a federal constitutional right was violated; and (2) the individual violating the constitutional right did so under color of law. *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir.1981). The civil rights law is not a general tool to discipline local law enforcement officers. *Id.; Stringer v. Dilger*, 313 F.2d 536, 540 (10th Cir.1963). "Thus, we review this case not to determine whether the police officer may have committed an actionable tort against the plaintiff, but rather to determine whether that conduct violated any of plaintiff's constitutional rights." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir.1990).

*Quezada v. County of Bernalillo*, 944 F.2d 710, 714 (10th Cir.1991). Only rights pro-

---

2. The record cited by the plaintiffs does not raise a reasonable inference that Kenneth agreed to diversion under duress. The allegation of duress in plaintiffs' brief does not create a controverted fact. In his deposition, Kenneth fully explained his understanding of the diversionary agreement without ever saying that he entered into it be-

cause the charges would be dropped against his wife. Considering also that he was represented by an attorney throughout these matters, it is only reasonable to infer that Kenneth fully appreciated the consequences and benefits of diversion for both himself and his wife, and voluntarily agreed to diversion.

tected by the Constitution or laws of the United States are actionable under § 1983. *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir.1981). In this case, the plaintiffs' claims turn upon their rights under the Fourth and Fourteenth Amendment.

## UNLAWFUL SEIZURE OR ARREST

The plaintiffs here claim they were unlawfully seized or were arrested without probable cause when the defendants physically restrained them and handcuffed them. When Sheriff Fields grabbed Kenneth by the neck, physical force was used to restrain or seize the plaintiff. Sheriff Fields secured his arrest of the plaintiff by handcuffing him. Officer Jameson also used physical force in restraining and then arresting Nancy. "A 'seizure' triggering the Fourth Amendment's protections occur only when government actors have, 'by means of physical force or show of authority.... in some way restrained the liberty of a citizen.'" *Graham v. Connor*, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968)). The plaintiffs' rights under the Fourth Amendment were implicated when the defendants seized and arrested the plaintiffs.

An arrest without probable cause violates a person's right under the Fourth Amendment to be free from unreasonable searches and seizures. *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir.1992). The Fourth Amendment is not violated when a person is arrested with probable cause. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871. Consequently, it is settled law that a § 1983 claim for false or unlawful or warrantless arrest cannot be maintained if the arresting officer had probable cause. *Juriss v. McGowan*, 957 F.2d 345, 349 n. 1 (7th Cir.1992); *Fields v. City of South Houston, Tex.*, 922 F.2d 1183, 1189 (5th Cir.1991). The arresting officer need not have had a specific intent to violate the Fourth Amendment, it is enough that his actions were not objectively reasonable under facts and circumstances facing him. *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872; *see also Caballero*, 956 F.2d at 206.

Probable cause to arrest exists when the officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979). This determination is made " 'in light of the circumstances as they would have appeared to a prudent, cautious, trained police officer.' " *Berry v. City of Phillipsburg, Kan.*, 796 F.Supp. 1400, 1405–06 (D.Kan. 1992) (quoting *U.S. v. Maher*, 919 F.2d 1482, 1485–86 (10th Cir.1990)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). In civil rights suits, the issue of probable cause to arrest is one for the jury. *DeLoach v. Bevers*, 922 F.2d 618, 623 (10th Cir.1990) (the issue underlying probable cause is whether the officer's actions were reasonable), *cert. denied*, —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 41 (1991).

The defendants contend first that the plaintiffs are precluded from challenging the lack of probable cause by reason of the diversionary agreement. If the court sustains this contention, then it can avoid deciding whether there was probable cause for Kenneth's arrest and whether Sheriff Fields is entitled to qualified immunity.

In *Hubbert v. City of Moore, Okl.*, 923 F.2d 769, 772–73 (10th Cir.1991), the court held that the state court's finding of probable cause to arrest at the preliminary hearing prevented the plaintiff from relitigating in federal court the issue of probable cause on her false arrest claim under § 1983. The Tenth Circuit followed Oklahoma law and gave the finding of probable cause the same preclusive weight it would have been given by an Oklahoma court. *Id.* at 772–73. The Tenth Circuit reversed the district court and granted summary judgment for the defendants since there was probable cause for the arrest and since the defendants were entitled to qualified immunity. *Id.* at 773.

■ Kansas applies a rule that differs to some degree from the Oklahoma rule applied in *Hubbert.* A conviction in police or municipal court conclusively establishes probable cause even though the plaintiff is acquitted on appeal, *Smith v. Parman,* 102 Kan. 787, 789–90, 172 P. 33 (1918) (demurrer sustained on a malicious prosecution claim), or even though the conviction is vacated on appeal for lack of prosecution, *Hill v. Day,* 168 Kan. 604, 215 P.2d 219 (1950) (demurrer sustained on malicious prosecution and false arrest claims), or even though the district court enters a judgment of acquittal, *Earley v. Harry's IGA,* 223 Kan. 32, 573 P.2d 572 (1977) (summary judgment sustained on malicious prosecution claim), and *Elbrader v. Blevins,* 757 F.Supp. 1174, 1178 (D:Kan.1991) (summary judgment sustained on malicious prosecution and false arrest claims under both state and federal law). Kansas law, however, does not accord the same finality to a probable cause determination made at the preliminary hearing. A finding at the preliminary hearing is not a complete defense but only *prima facie* evidence of probable cause which can be overcome by a preponderance of the evidence to the contrary. *Thompson v. General Finance Co., Inc.,* 205 Kan. 76, 94–95, 468 P.2d 269 (1970) (malicious prosecution and false arrest claims); *see Stohr v. Donahue,* 215 Kan. 528, 529, 527 P.2d 983 (1974).

State courts in Kansas have not decided if a diversion agreement should have any effect or evidentiary weight in a subsequent civil suit involving the issue of probable cause. From what the Supreme Court of Kansas has said about diversion, it is believed that court would consider a diversion to function as a conviction for purposes of barring a subsequent civil suit for malicious prosecution or false arrest. With the abolition of plea bargaining on DUI charges, the Kansas Legislature intended diversion to be a less punitive alternative for first offenders. *State v. Clevenger,* 235 Kan. 864, 868, 683 P.2d 1272 (1984). In deciding that diversions were convictions for purposes of sentence enhancement, the Kansas Supreme Court in *Clevenger* noted the similarities between diversion and a conviction. Like a final judgment of the court, diversion ends in the dismissal of charges upon the defendant's successful completion of the diversion program. 235 Kan. at 866, 683 P.2d 1272. Except for incarceration, diversion carries the same punishment for a first offense. 235 Kan. at 867, 683 P.2d 1272. The court clearly saw a parallel between diversion and a conviction:

> The nature of diversion in the context of DUI violations is particularly indicative of the diversion's conviction-like nature. In order to enter into a diversion agreement, a defendant must stipulate to the facts constituting the offense. If the diversion program is not completed, a trial is had to the court based solely upon the stipulation. Thus, while there is not a guilty plea, there is an admission by the defendant of the commission of the offense.

235 Kan. at 867, 683 P.2d 1272. Even though diversion may not be an adjudication of guilt, both parties must stipulate to the facts which constitute the DUI offense and if diversion is not concluded satisfactorily then the defendant must be tried solely on those stipulated facts. *Id.* By entering into diversion, the defendant waives his constitutional rights to a speedy trial and trial by jury. *Id.*

■ Diversion results in a final judgment to the extent that the criminal charges are dismissed on the agreement of the parties. Though not an adjudication of guilt, diversion is a consent decree wherein the parties have agreed on the payment of certain fines, completion of a diversion program, and the stipulation of those facts constituting the offense for which the defendant was charged and on which the defendant would be tried in the event he fails diversion. In this case, the court can conclude from the face of the diversion agreement that Kenneth Swanson voluntarily participated in diversion and waived his constitutional rights to a speedy arraignment, preliminary hearing, a speedy trial and trial by jury. Kenneth Swanson stipulated to the facts on which the offense was based including Officer Jameson's testimony that he apprehended Swanson for operating a motor vehicle while under the influence of intoxicating liquor and/or drugs. Kenneth Swanson also waived any right to contest this testimony for he agreed

that in the event he did not complete diversion successfully then his guilt would be determined solely from the stipulated facts. In effect, Kenneth Swanson stipulated that Officer Jameson had reason and cause to apprehend and charge him for DUI. More importantly, Kenneth Swanson agreed that these stipulations were necessary for him to receive diversion and to have the charges dismissed upon completion of diversion. To bar him from now taking a position contrary to those stipulations which were a necessary and essential element to the consensual dismissal of charges appears consistent with the general doctrine of issue preclusion in Kansas.[3]

This court is not alone in giving such preclusive effect to diversion. In *Hinton v. City of Elwood*, No. 89–2342–0, 1991 WL 205035, 1991 U.S.Dist. LEXIS 14290 (D.Kan. Sept. 9, 1991), Judge O'Connor held that the plaintiff's diversion agreement barred the plaintiff's state and federal claims for malicious prosecution and false arrest:

> As noted by defendants, Hinton entered into a Diversion Agreement and thus cannot demonstrate that the criminal proceeding terminated favorably to him. *Cissell v. Hanover Ins. Co.*, 647 F.Supp. 757, 758–59 (E.D.Ky.1986) (defendant's participation in a pre-trial diversion program precludes a later malicious prosecution claim); *see also Singleton v. City of New York*, 632 F.2d 185, 193–94 (2d Cir.1980), *cert. denied*, 450 U.S. 920 [101 S.Ct. 1368, 67 L.Ed.2d 347] (1981); *Konon v. Fornal*, 612 F.Supp. 68, 69–71 (D.Conn.1985). Defendant's motion is therefore granted with respect to [malicious prosecution] claim.
>
> . . . .
>
> The court finds that defendants are entitled to summary judgment on Hinton's state law claims of false arrest and false imprisonment. As noted by the court in *Konon*, "having decided that the criminal charge at issue in the state court was not disposed of in a manner favorable to the plaintiff, ... it would be anomalous to allow the plaintiff to challenge here the existence of probable cause for his arrest and incarceration for that same criminal charge." 612 F.Supp. at 71. Hinton's claims of false arrest and false imprisonment are therefore dismissed.

1991 WL 205035 at *6–*7, 1991 U.S.Dist. LEXIS 14290 at *20. In *Konon v. Fornal*, 612 F.Supp. 68, 71–72 (D.Conn.1985), which Judge O'Connor followed in *Hinton*, the court relied not only on the anomaly quoted above but on what it considered to be important policy considerations:

> While disposition of a criminal charge through a guilty plea requires the court to find that there is a factual basis for the plea, disposition through the accelerated rehabilitation law requires no findings of fact with respect to the defendant's guilt or innocence. However, it is unlikely that the accused will choose disposition pursuant to section 54–56e if there was no probable cause for his arrest. It would make no sense to allow an accused to bypass the criminal system with its various safeguards concerning probable cause, only to be able to turn around and claim in a subsequent civil action that there was no probable cause for his arrest. If disposition pursuant to the accelerated rehabilitation law were held to leave open the plaintiff's right to bring a subsequent section 1983 action for false arrest and false imprisonment, fewer prosecutors would be willing to consent to such dispositions. The net result would be that the clear policy behind the accelerated rehabilitation law—to give one accused of a crime not of a serious nature, who would probably not offend in the future, and who is a first-time offender, a one-time chance at personal rehabilitation without incurring the risk of a full trial on the merits of the information—would be thwarted. In light of these policy considerations, the plaintiff's section 1983 claim for false imprisonment is barred.

612 F.Supp. at 72. Only months ago, the Second Circuit adopted the reasoning in *Konon* and held that a plaintiff could not bring claims for malicious prosecution or false im-

---

3. The plaintiffs' references to duress are nothing more than allegations which do not create a genuine issue of material fact.

prisonment under § 1983 when the plaintiff's criminal case was terminated under an accelerated pretrial rehabilitation program. *Roesch v. Otarola,* 980 F.2d 850, 853 (2nd Cir.1992). The court said:

> If we permit a criminal defendant to maintain a section 1983 action after taking advantage of accelerated rehabilitation, the program, intended to give first-time offenders a second chance, would become less desirable for the State to retain and less desirable for the courts to use because the savings in resources from dismissing the criminal proceeding would be consumed in resolving the constitutional claims.
>
> A person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim.

980 F.2d at 853.

This court shares the concerns expressed in *Konon* and *Roesch.* The intent of the Kansas Legislature to create a less harsh alternative for first time offenders would be frustrated if prosecutors considered diversion less attractive because of the surviving potential for civil rights litigation on the very constitutional issues that would be resolved in a criminal proceeding. The rule is not fundamentally unfair to civil rights plaintiffs. Whatever reasons a person may have for taking diversion on the criminal charges, it is unlikely that such a person would pay a fine, agree to diversion, stipulate to the facts establishing the offense and allow the diversion to remain as a basis for sentence enhancement when there is a serious question whether probable cause even existed for his arrest. These policy considerations in combination with the conviction-like nature of diversion in Kansas persuades this court that the plaintiff Kenneth Swanson by taking diversion has waived his section 1983 claims for unlawful seizure or arrest.

■ Officer Jameson had probable cause to arrest Nancy Swanson. She knew he was a law enforcement officer. She resisted his efforts to restrain her from interfering with the encounter between Fields and her husband. The fact that she did not know who Fields was is immaterial, for Officer Jameson knew and lawfully attempted to stop her. It is uncontroverted that Nancy touched or used force against Officer Jameson in twice breaking free from his grasp and in fighting his restraint. Officer Jameson reasonably believed there was probable cause that Nancy had unlawfully and intentionally touched and used force against him in a rude or angry manner. *See* K.S.A. 21–3412 and 21–3413. The court concludes that no reasonable jury could find from the evidence of record that it was objectively unreasonable for Officer Jameson to believe that probable cause existed to arrest Nancy.

Both defendants are granted summary judgment on the plaintiffs' claims of unlawful seizure or arrest.

## UNREASONABLE OR EXCESSIVE FORCE

■ Having concluded that the plaintiffs were seized and arrested with probable cause, the next claim is whether the defendants used unreasonable force. The use of excessive force in an arrest implicates the right of a person under the Fourth Amendment "to be secure ... against unreasonable ... seizure." *See Graham,* 490 U.S. at 394, 109 S.Ct. at 1870. The standards for such a claim are found in the Supreme Court's *Graham* opinion where they are laid out in detail.

Couched in Fourth Amendment terms, the issue is whether the amount of force used was " 'objectively reasonable' in light of the facts and circumstances confronting [the officers], without regard to [the officers'] underlying intent or motivation." *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872. These circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. In deciding what is reasonable under the circumstances, allowance must be made "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, un-

certain, and rapidly evolving—about the manner of force that is necessary in a particular situation." 490 U.S. at 396–97, 109 S.Ct. at 1872. Thus, reasonableness must be decided "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. at 1872 (citations omitted).

The court believes that Sheriff Fields did not use excessive or unreasonable force in grabbing Kenneth by the neck with one hand, placing Kenneth up against the Blazer, and handcuffing him. Based upon what had transpired up to the point of the arrest, it was not unreasonable for an officer to consider Kenneth aggressive, belligerent, and resistant to authority. The plaintiff stopped the Suburban suddenly, motioned Fields to pass him, and glared at Fields. After Fields parked in a vacant lot, Kenneth drove to the lot and confronted Fields with the opening line, "Are you looking for trouble?" When Fields emerged from his Blazer, the plaintiff drove away and yelled, "Go to hell." Immediately before the arrest, Kenneth stopped his vehicle in the middle of the driving lane, jumped out of it, ignored Officer Jameson's request to move the Suburban to the side of the road, ran towards Fields yelling "You son-of-a-bitch," and then ran towards the rear of Fields' Blazer. Sheriff Fields identified himself and immediately subdued Kenneth by grabbing his neck with one hand and handcuffing him. Kenneth struggled during the handcuffing.

The plaintiffs argue that the use of any force was unreasonable. This position is contradicted by the firmly-rooted notion that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871 (citations omitted). Regardless of Sheriff Fields' larger size, it was reasonable for him to consider the plaintiff a risk and to restrain him immediately. " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' ..., violates the Fourth Amendment." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1872 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.), *cert.*

*denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)). Sheriff Fields never struck, knocked down, hit or kicked Kenneth. The only pain or discomfort that Kenneth complained of was being grabbed by the neck and in being handcuffed too tight. There was no testimony that Sheriff Fields continued to squeeze Kenneth's neck or to use any other gratuitous force after Kenneth was secured with the handcuffs. A more comfortable set of handcuffs were placed on Kenneth when he complained about the pain. Kenneth never sought any medical treatment for any injuries and offers no evidence of any serious physical injury. These complaints of minor pain and discomfort fail to sustain any inference of inordinate force being used in the arrest. *See Dean v. City of Worcester,* 924 F.2d 364, 369 (1st Cir.1991). Even though in hindsight and with the benefit of knowing and understanding the plaintiffs' motives and thoughts, such force may seem unnecessary. It is not that perspective which controls but rather what a reasonable officer in Sheriff Fields' shoes would have done. Sheriff Fields' use of minimal force was objectively reasonable in light of what reasonably could be perceived as belligerent, aggressive, and unusual conduct by Kenneth. *See Pride v. Kansas Highway Patrol,* 793 F.Supp. 279, 281–82 (D.Kan.1992). This court believes that no reasonable jury could find otherwise.

■■■ Officer Jameson's use of force to restrain Nancy from interfering with Sheriff Field's arrest was objectively reasonable. The plaintiffs concede that Officer Jameson acted reasonably in initially restraining Nancy. They argue, however, that the officer's continued restraint and use of force was unreasonable because he failed to explain to Nancy that her husband was being arrested by the Sheriff of Crawford County. Such a claim denies any allowance for the fact that Officer Jameson was making a split-second decision under tense and uncertain circumstances. Upon being grabbed by the arms, Nancy immediately resisted. Instead of asking Jameson, a uniformed police officer, why he was holding her back instead of helping her husband, she resisted with such effort that she was able to break free two times from his grasp. On both occasions, Officer

Jameson pushed her up against the Blazer. When Nancy's efforts increased to the point that Officer Jameson believed that she had struck him, he arrested and handcuffed her. He never struck, kicked, or hit Nancy during their struggles.

In the calm of one's own present circumstances, it may seem prudent to have attempted an explanation. Of course, this assumes Nancy's resistance subsided to the point that Officer Jameson could have explained the situation to her. Indeed, the plaintiffs have offered no proof that Officer Jameson was ever presented with that opportunity until he had arrested and handcuffed her. More importantly, the test is not what in hindsight seems prudent, but it is what a reasonable officer would do in the heat of the moment. Nancy's only complaint of injury or pain was in the bruises and swelling to her wrists from the handcuffs. The authority to arrest here carries with it the authority to handcuff. When she complained of the tight handcuffs, they were removed. Such allegations of injury from tight handcuffs do not indicate an unconstitutional use of excessive force. *Foster v. Metropolitan Airports Com'n,* 914 F.2d 1076, 1082 (8th Cir.1990) (applied the Fourth Amendment standards articulated in *Graham* and cited as authority *Hannula v. City of Lakewood,* 907 F.2d 129, 132 n. 3 (10th Cir.1990)). A reasonable jury could not find that Officer Jameson's use of force in restraining and arresting Nancy was objectively unreasonable.

Both defendants are granted summary judgment on the plaintiffs' excessive force claims.

## MALICIOUS PROSECUTION AND DENIAL OF DUE PROCESS

■ Among their claims under § 1983 set forth in the pretrial order, the plaintiffs assert "unlawfully taking property without compensation" in violation of the Fourteenth Amendment and "freedom from malicious prosecution" as secured by the Fourth and Fourteenth Amendments. The defendants'

motions seek summary judgment on these claims also. The plaintiffs did not respond to the defendants' motions or arguments on these claims. Without any response, the court must consider and grant the defendants' motions as uncontested on these claims. *See* D.Kan. Rule 206(g). Even if a response had been made, the court would grant the defendants' motions on the merits of their arguments. Specifically, the court's conclusions concerning probable cause under the unlawful seizure or arrest claim would apply to the malicious prosecution claim as well and entitle the defendants to summary judgment. As to the removal of the tools, the plaintiffs have not shown that the state and administrative remedies available to them for recovering the property are inadequate or violate due process.[4] *See Huxall v. First State Bank,* 842 F.2d 249, 250 (10th Cir.1988). Both defendants are entitled to summary judgment on these § 1983 claims.

## STATE LAW CLAIMS

A district court may decline to exercise supplemental jurisdiction over state law claims when all of the federal law claims over which it had original jurisdiction are dismissed. 28 U.S.C. § 1367(c). Though the exercise of supplemental jurisdiction in this instance may be one of discretion, federal courts generally dismiss the state law claims when the federal law claims are dismissed or decided before trial. *See, e.g., Harris v. Evans,* 795 F.Supp. 1060, 1065 (D.Kan.1992). The interests of comity and federalism are furthered when a state court is permitted to try its own lawsuits. The plaintiffs will not be prevented from filing their remaining claims in state court so long as they act within either the thirty-day period provided in 28 U.S.C. § 1367(d) or the six-month period provided in K.S.A. 60–518. In its discretion, the court declines to exercise supplemental jurisdiction over the plaintiffs' state law claims and dismisses them without prejudice.

---

4. In their statement of facts, the plaintiffs say their fear of police should excuse their failure to request or to seek the return of the tools. The plaintiffs cite no authority for the underlying proposition that state procedures and remedies are inadequate or unconstitutional when they fail to accommodate subjective fears or apprehensions.

IT IS THEREFORE ORDERED that the defendant Fields' motion for summary judgment (Dk. 72) is granted on all of the plaintiffs' claims under 42 U.S.C. § 1983;

IT IS FURTHER ORDERED that the defendant Jameson's motion for summary judgment (Dk. 75) is granted on all of the plaintiffs' claims under 42 U.S.C. § 1983;

IT IS FURTHER ORDERED that the plaintiffs' remaining state law claims are dismissed without prejudice.