**Jerra POWELL, as personal representative of the Estate of Derek Powell, Plaintiff,**

v.

**Kerry FOURNET, individually, and George Epp, in his official capacity as Sheriff of Boulder County, Defendants.**

Civ. A. No. 89–S–0845.

United States District Court, D. Colorado.

March 17, 1994.

Joseph Mellon, Denver, CO, for plaintiff.

Marc Colin, Bruno, Bruno & Colin, P.C., Denver, CO, Madeline Mason, Boulder, CO, Theodore Borrillo, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

SPARR, District Judge.

THIS MATTER comes before the court on: (1) Defendant Fournet's Renewed Motion for Judgment as a Matter of Law Pursuant to F.R.C.P. 50(b), filed November 24, 1993; and (2) the Plaintiff's Application for Attorney Fees Pursuant to 42 U.S.C. § 1988 and for Pre–Judgment Interest, filed November 29, 1993. The court has reviewed the motions, the responses, the accompanying exhibits, the entire case file, the evidence and arguments from the trial, the arguments of counsel at the hearing held January 26, 1993, and the applicable law and is fully advised in the premises.

### 1. Judgment as a Matter of Law

In deciding whether a Rule 50(b) motion should be granted, the standard is not whether there was literally no evidence to support the party opposing the motion, but whether evidence existed upon which the jury could have properly found for the non-movant. *Huffman v. Caterpillar Tractor Co.*, 908 F.2d 1470, 1478 (10th Cir.1990) (quoting *Brown v. McGraw*, 736 F.2d 609, 613 (10th Cir.1984)). The trial court is required to view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence. *Graham v. Wyeth Laboratories*, 906 F.2d 1399, 1401 (10th Cir.), *cert. denied*, 498 U.S. 981, 111 S.Ct. 511, 112 L.Ed.2d 523 (1990) (quoting *Brown v. McGraw*, 736 F.2d at 612–613). A Rule 50(b) motion should only be granted where the evidence is such that a reasonable jury could only reach one conclusion, *Danner v. International Medical Marketing, Inc.*, 944 F.2d 791, 793 (10th Cir.1991) (quoting *Motive Parts Warehouse v. Facet Enterprises*, 774 F.2d 380, 385 (10th Cir.1985)); in other words, when the evidence points but one way and is susceptible of no reasonable inferences which may sustain the position of the non-moving party. *Charles Woods Tele-vision v. Capital Cities/ABC*, 869 F.2d 1155, 1159–60 (8th Cir.), *cert. denied*, 493 U.S. 848, 110 S.Ct. 145, 107 L.Ed.2d 104 (1989); *Lucas v. Dover Corp.—Norris Division*, 857 F.2d 1397, 1400 (10th Cir.1988). In ruling on a motion for judgment as a matter of law, the court must determine whether the record contains substantial evidence in support of the jury's decision. *Griffin v. Strong*, 983 F.2d 1544, 1546 (10th Cir.1993). The court should disregard any jury determination for which there is no legally sufficient evidentiary basis enabling a reasonable jury to make it. Fed.R.Civ.P. 50(b), Notes of Advisory Committee on Rules, 1991 Amendment.

### 2. Fourth Amendment Law

The Plaintiff's First Claim for Relief against Defendant Fournet alleges violation of 42 U.S.C. § 1983 by the use of excessive force in violation of the Fourth Amendment. Having acknowledged that Fournet's shooting of Powell constituted a seizure under the Fourth Amendment, *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985), the court now considers whether the Plaintiff has shown that the seizure violated the Fourth Amendment.

The Supreme Court has ruled in *Graham v. Connor* that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard...." 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (emphasis in original). Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871 (quoting *Tennessee v. Garner*, 471 U.S. at 8, 105 S.Ct. at 1699–1700).

Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of

physical coercion or threat thereof to effect it. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871–72. The Fourth Amendment permits a police officer's use of deadly force in those situations, among others, where he has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others. *Tennessee v. Garner,* 471 U.S. at 11, 105 S.Ct. at 1701. If the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape and. if, where feasible, some warning has been given. *Tennessee v. Garner,* 471 U.S. at 11–12, 105 S.Ct. at 1701–02.

■ "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872; *Pride v. Does,* 997 F.2d 712, 716–17 (10th Cir.1993); *Zuchel v. Spinharney,* 890 F.2d 273, 274 (10th Cir.1989). The reasonableness inquiry is an objective one: the issue is whether the amount of force used was "objectively reasonable" in light of the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motive. *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872. These circumstances include: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872; *Hinton v. City of Elwood, Kansas,* 997 F.2d 774, 780 (10th Cir.1993). Although the amount of force used may seem unnecessary in hindsight and with the benefit of understanding the Plaintiff's motives and thoughts, it is not that perspective which controls, but rather what a reasonable officer in Deputy Fournet's shoes would have done. *Swanson v. Fields,* 814 F.Supp. 1007, 1017 (D.Kan.), *judgment aff'd.,* 13 F.3d 407 (10th Cir.1993).

■ An officer's erroneous perception or belief does not violate the Fourth Amendment if such perception or belief is objectively reasonable at the moment of the incident. *Krueger v. Fuhr,* 991 F.2d 435, 439 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993), citing *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. The court must view the incident from the perspective of the defendant. *Pride v. Kansas Highway Patrol,* 793 F.Supp. 279, 281 (D.Kan.1992), *aff'd,* 997 F.2d 712 (10th Cir.1993). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. at 396–97, 109 S.Ct. at 1872. It can always be argued that an officer's decision to use deadly force might not have been the most prudent course of action, but the Constitution requires only that the seizure be objectively reasonable, not that the officer pursue the most prudent alternative as judged by 20/20 hindsight. *Cole v. Bone,* 993 F.2d 1328, 1334 (8th Cir.1993), citing *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872.

■ The Fourth Amendment prohibits unreasonable *seizures,* not unreasonable or ill-advised conduct in general. *Cole,* 993 F.2d at 1333 (citations omitted) (emphasis added). Consequently, the court must scrutinize only the seizure itself, not the events leading to the seizure, for reasonableness under the Fourth Amendment. *Cole,* 993 F.2d at 1333. A plaintiff's allegations that an officer acted negligently or contrary to good police procedure, thereby manufacturing the circumstances that gave rise to a fatal seizure, are not material. *Drewitt v. Pratt,* 999 F.2d 774, 779–80 (4th Cir.1993) (citation omitted). Whether Fournet followed good police practices in approaching the Powell residence is irrelevant to the issue of whether at the moment of the shooting Fournet reasonably believed that Powell posed a threat of death or serious bodily harm. *Drewitt,* 999 F.2d at 780 (citations omitted). No matter what transpired up until the shooting itself, the only material inquiry is whether the officer's decision to shoot the plaintiff was reasonable in light of the specific circumstances at the moment of the shooting; that is, whether the

officer had reason to believe that there was a threat of physical harm. *Drewitt,* 999 F.2d at 779–80 (citation omitted).

### 3. Analyzing the Jury Verdict in Light of the Evidence at Trial

■ The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872. Because the reasonableness inquiry is whether the amount of force used was "objectively reasonable" in light of the facts and circumstances confronting the officer, without regard to the officer's underlying intent or motive, *Graham,* 490 U.S. at 397, 109 S.Ct. at 1872, the court examines the evidence from the trial to determine whether Deputy Fournet's decision to shoot Powell was reasonable in light of the specific circumstances at the moment of the shooting; that is, whether Fournet had reason to believe that he was threatened with death or serious bodily harm.

The evidence was essentially undisputed as to what Fournet knew at the time he went to the Powell residence. Fournet responded to a report of a disturbance with gunshots fired. Virgil and Jimmie Gillespie testified that they advised Fournet that they heard "screaming" and "wailing" coming from the Powell residence for four to five hours on the afternoon of July 23, 1988. The Gillespies reported to Fournet that they had seen Powell in his driveway behaving in a manner that caused them to believe he was intoxicated or irrational. The Gillespies also told Fournet that they heard two shotgun blasts come from the Powell residence, followed by silence. Virgil Gillespie expressed to Fournet that he was extremely concerned about the physical well-being of the occupants of the Powell residence, even concerned that someone might be dead or dying there. Based on the information from the Gillespies, Fournet promptly radioed for backup. Based on the possibility of imminent loss of life, Fournet undertook to investigate the situation at the Powell residence before the backup arrived.

Deputy Fournet approached the Powell residence in his marked Sheriff's Depart-ment vehicle and parked near the bedroom window. Fournet approached the house slowly on foot and tried to listen for any sounds as clues to the situation. Suddenly, Fournet heard the sound of metal striking against metal, saw the porch light come on, saw the screen door thrust open, and was faced with a nude man pointing a rifle in his direction and activating the lever, apparently to feed a round of ammunition into the firing chamber. Believing he was facing imminent death or serious bodily harm, Fournet fired his weapon several times in rapid succession while retreating to a place of cover, striking and killing Powell. Powell fell on the porch with the rifle near his hand. Approximately one to two seconds elapsed between the time Fournet heard the first sound and Powell was killed.

The Plaintiff's theory of the case is that Fournet shot Powell before Powell posed any threat to Fournet. The Plaintiff argues that the physical evidence showed that Powell was just coming out of the screen door and the door was in the process of opening when Deputy Fournet shot him. The Plaintiff's theory is that the physical evidence showed that Fournet fired the shot that inflicted the shoulder wound when Powell was turned in the doorway in such a manner that Powell's rifle was not yet visible to Fournet. Even taking the evidence in the light most favorable to the Plaintiff, the court concludes that the evidence did not support the Plaintiff's theory.

■ Because the jury verdict must be supported by substantial evidence, *Griffin,* 983 F.2d at 1546, the verdict may not rest on speculation and conjecture. The jury's freedom to draw inferences from the evidence does not extend so far as to allow wholly unreasonable inferences or inferences which amount to mere speculation and conjecture. *Sunward Corp. v. Dun & Bradstreet, Inc.,* 811 F.2d 511, 521 (10th Cir.1987); *Nichols Construction Corp. v. Cessna Aircraft Co.,* 808 F.2d 340, 346–47 (5th Cir.1985).

The Plaintiff's evidence was insufficient to show that Fournet used unreasonable force under the circumstances. The Plaintiff presented no reliable evidence that Fournet

fired his gun before he saw Powell's rifle pointed in his direction. First, the Plaintiff's evidence of the shot and wound sequence did not support the jury's decision. The Plaintiff's evidence did not establish that the shoulder (or back) wound was the first shot that Fournet fired. Plaintiff's expert witness, DiMaio, testified only that the wounds to the shoulder and the groin occurred before the head wound. (DiMaio testimony by deposition dated May 15, 1991 p. 18, pp. 23–24, pp. 84–85). Second, Plaintiff's other expert witness, DiVirgilio, did not refute that Powell's rifle was pointed in the direction of the Hyundai and that Deputy Fournet was standing "in the direction of the Hyundai" from where Powell was. (Transcript of DiVirgilio testimony, Nov. 5, 1993 pp. 119–21, pp. 128–30; Nov. 8, 1993 pp. 145–47). Third, DiVirgilio admitted that the shot trajectory calculations were subject to several variables, such as the position of Fournet's gun and the reaction of a moving body. DiVirgilio admitted he lacked expertise in these calculations. (Transcript of DiVirgilio testimony, Nov. 5, 1993 p. 95, pp. 115–25). Fourth, because Powell's body came to rest in front of the closed screen door, the only determination for which there was legally sufficient evidentiary basis was that the screen door was closing or closed at the time Fournet fired the shot that killed Powell. DiVirgilio admitted it was equally probable that the screen door was in the process of closing rather than opening. (Transcript of DiVirgilio testimony, Nov. 5, 1993 pp. 122–23). DiVirgilio could not explain how Powell's body ended up on its side and back in front of the door.

After evaluating the evidence and arguments from the trial and from the January 23, 1994 hearing and applying the criteria to be used in undertaking a Fourth Amendment objective reasonableness inquiry, the court believes that Deputy Fournet's use of force was undeniably objectively reasonable under the circumstances. See Hinton, 997 F.2d at 780–782. First, based on the Gillespies' report, Fournet believed he was investigating a scene where someone could be dying or dead. Fournet also had reason to believe he might encounter an inebriated or irrational individual who had a gun. Thus, the crime at issue can be characterized as severe. Second,

based on the information Fournet had, when Fournet saw the screen door come open and saw a nude man pointing a rifle in his direction and cocking the rifle's lever, Fournet was justified in perceiving that the suspect posed an immediate threat to Fournet's safety. Third, Fournet was justified in perceiving that the suspect was actively resisting or attempting to evade Fournet's attempt to contact him. Based upon the information that Deputy Fournet had, it was objectively reasonable for Fournet to believe that he faced a serious and immediate danger of physical harm when Powell pointed a rifle in his direction while cocking the lever. See Krueger, 991 F.2d at 439.

The evidence does not support the jury's verdict in favor of the Plaintiff and against Deputy Fournet. The jury was left to rely more on speculation than evidence and reasonable inference. See Sunward, 811 F.2d at 519. The Plaintiff's experts' opinions were supported by nothing more than conjecture and supposition—by possibilities, not probabilities. See Calhoun v. Honda Motor Co., Ltd., 738 F.2d 126, 132–33 (6th Cir.1984). The inferences required to find Fournet used excessive force do not follow from the evidence and must be rejected. See Sunward, 811 F.2d at 521–22. The jury's verdict is contrary to the evidence and the law and must be disregarded. The jury verdict must be set aside and the Defendant is entitled to judgment on the Plaintiff's claim.

### 4. The Disappearing Issue of Qualified Immunity

 The doctrine of qualified immunity provides that government officials generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Dixon v. Richer, 922 F.2d 1456, 1459–60 (10th Cir.1991) (quoting Rozek v. Topolnicki, 865 F.2d 1154, 1157 (10th Cir. 1989)). The framework for analyzing a claim of qualified immunity on summary judgment is that once a defendant raises the defense of qualified immunity the plaintiff carries the burden of convincing the court both that the defendant's alleged conduct violated the law

and that the law was clearly established when the alleged violation occurred. *Dixon,* 922 F.2d at 1460 (quoting *Pueblo Neighborhood Health Centers, Inc. v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988)). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). If the plaintiff does not meet this initial burden the government official is properly spared the burden and expense of proceeding any further and should be granted summary judgment. *Powell v. Mikulecky,* 891 F.2d 1454, 1457 (10th Cir.1989). On the other hand, if the plaintiff demonstrates to the court that the defendant's alleged conduct violated a clearly established right, then the defendant assumes the normal burden of a movant for summary judgment to establish that no material facts remain in dispute that would defeat his claim for qualified immunity. *Powell,* 891 F.2d at 1457.

 Defendant Fournet previously raised the issue of qualified immunity in his motion for summary judgment filed November 1, 1990, wherein he argued that he was justified in using deadly force against Powell. The court denied summary judgment on the issue of qualified immunity, finding that the allegations satisfied the Plaintiff's burden under either the Fourth or the Fourteenth Amendments. On June 25, 1992, the Tenth Circuit Court of Appeals affirmed the denial of summary judgment, stating that "[I]n light of this conflicting evidence, there remains a genuine factual dispute over whether Defendant's use of deadly force against decedent was justified, precluding summary judgment." *Powell v. Fournet,* 968 F.2d 21, Order and Judgment (10th Cir.1992). The issue of qualified immunity was never raised by the Defendant again, neither in his motion for judgment as a matter of law at the close of the Plaintiff's case, nor in his renewed motion for judgment as a matter of law at the close of the defense case. The court would note that, pursuant to the court's determinations in this memorandum opinion and order, Fournet would be entitled to qual-

ified immunity. *See Guffey v. Wyatt,* 18 F.3d 869, 873 (10th Cir.1994).

*5. Plaintiff's Application for Attorney Fees and Pre-Judgment Interest*

Plaintiff requests attorney fees pursuant to 42 U.S.C. § 1988. Based on the court's determinations in this memorandum opinion and order, the Plaintiff can no longer be considered the "prevailing party" under § 1988. Therefore, Plaintiff's request for attorney fees must be denied.

Accordingly, IT IS ORDERED:

1. Defendant Fournet's Renewed Motion for Judgment as a Matter of Law Pursuant to F.R.C.P. 50(b) is GRANTED. Judgment as a matter of law shall enter in favor of Defendant Fournet, individually, and against the Plaintiff on the Plaintiff's First Claim for Relief.

2. The previous judgment and amended judgments entered November 17, 1993, November 18, 1993, February 1, 1994, and March 8, 1994 are hereby VACATED.

3. The Plaintiff's Application for Attorney Fees Pursuant to 42 U.S.C. § 1988 and for Pre-Judgment Interest is DENIED. Based on the court's determination that the jury verdict in favor of the Plaintiff must be set aside, the Plaintiff is not the prevailing party under § 1988.

4. Each party shall bear his, her, or its own costs.